UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| **CHRISTOPHER JAMES WALKER**, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>**HUMANA PHARMACY, INC.,**<br><br>                    Defendant. | C.A. No.<br><br>**DEMAND JURY TRIAL** |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.  This action arises out of Defendant Humana Pharmacy Inc.'s ("Defendant") practice of placing autodialed telemarketing calls to individuals in the absence of prior express written consent, and in the absence of any "do not call" policy or training, in violation of two separate provisions Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2.  Despite not having such a policy or conducting this training, as required by law prior to making telemarketing calls, Defendant has placed numerous autodialed calls to Plaintiff's cellular telephone.

3.  Accordingly, Plaintiff brings this TCPA action on behalf of himself and a class of similarly situated individuals under 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c).

### JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

5.  This Court has jurisdiction over Defendant because Defendant conducts business transactions in this District, has committed tortious acts in and from this District, and has offices

located in this District.

6. Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District, has offices located in this District, and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

7. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Middletown, Delaware.

8. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

9. Defendant is, and at all times mentioned herein was, a Delaware corporation with its principal place of business at 500 West Main Street, Louisville, Kentucky 40202 and its registered agent for service of summons is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

10. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## FACTUAL ALLEGATIONS

11. Defendant has placed telephone calls to Plaintiff's cellular telephone number ending in 1944.

12. Defendant's calls were all made in an effort convince Plaintiff to sign up for its online pharmacy.

13. While Plaintiff maintains health insurance with Defendant, Plaintiff never gave Defendant consent to place telemarketing calls to his cellular telephone.

14. In addition, Plaintiff asked Defendant, both orally and in writing, to stop calling him.

15. Specifically, on April 13, 2018, Plaintiff called Defendant's telephone number, 888-538-3518, and asked to be remove from the calling list, but the operator refused.

16. That same day, Plaintiff, through Defendant's web portal, wrote "I do not want any calls to my number. Consider this notice to remove my name and number from humana pharmacy home delivery…. Do NOT contact me for marketing purposes again. I did not agree to marketing calls and do not now."

17. Plaintiff received an additional telemarketing call from Defendant on April 14, 2018 at 11:38 am.

18. On April 16, Defendant, through its agent Antynette J., responded that Plaintiff could be placed on Humana's "do not call" list, but explained that he would not receive *any* calls if he proceeded. Defendant did not place Plaintiff on its "do not call" list at that time, despite Plaintiff's unequivocal request that Defendant do so.

19. That same day, Plaintiff responded that he "want[s] to be on the do not call list…. Please remove my number." Plaintiff then provided his number.

20. On the following day, April 17, Defendant's agent Antynette responded to acknowledge Plaintiff's request, and stated that a request had been made to place his telephone number on the "do not call" list.

21. Defendant's agent Antynette further stated that "[a]lready-scheduled calls … will continue until Humana processes the no-call request" and that "it may take up to seven days until a member's phone number is removed."

22. Plaintiff received additional telemarketing calls from Defendant on April 19, April

3

20, April 26 (three times), and May 11.

23.     On May 11, 2018, Plaintiff called Defendant once again to asked to be remove from Defendant's calling list, but was told that certain calls could not be stopped.

24.     All of the calls made to Plaintiff were without prior express written consent, all calls after April 13 were without any consent, and the final four calls on April 26 and May 11 were outside of the seven-day period described in Defendant's April 17 message (a period to which Defendant was not entitled in the first place).

25.     Each of Defendant's calls to Plaintiff appeared to use an automatic telephone dialing system.

26.     Specifically, the calls contained a lengthy and unnatural pause from the time the call was answered to the time one of Defendant's representatives came on the line.

27.     Some of Defendant's calls also led to "dead air" and hang up calls.

28.     This behavior is indicative of a system that automatically dials telephone numbers in bulk, and then seeks to automatically match "connected" calls to an available representative. In other words, an automatic telephone dialing system.

29.     Furthermore, Defendant's representation that "already-scheduled calls" would continue until Plaintiff's "do not call" request was processed suggests that the calls were made through automated scheduling means.

30.     Furthermore, Defendant's representation that certain calls could not be stopped, or words to that effect, suggests that the calls were automated.

31.     These calls were all telemarketing, as they were intended to convince Plaintiff purchase and use Defendant's goods and services.

32.     Because the calls constitute telemarketing, Defendant was required to obtain prior

4

express written consent from the persons to whom it made calls using an automatic telephone dialing system.

33. "Prior express written consent" is specifically defined by statute as:

> [A]n agreement, in writing, bearing the signature of the person called <u>that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice</u>, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

34. Defendant never disclosed to Plaintiff that it may or would make telemarketing calls Plaintiff.

35. Defendant never disclosed to Plaintiff that it may or would call Plaintiff using an automatic telephone dialing system or prerecorded voice.

36. Defendant never solicited Plaintiff's consent to receive autodialed or prerecorded telemarketing calls.

37. The course of conduct described above is problematic for two reasons: first, because Defendant did not obtain the required consent in the first place to make autodialed telemarketing calls before making its calls, all such calls are illegal; second, after Plaintiff revoked his consent, Defendant had no consent for any autodialed calls, and thus any autodialed call after that revocation is illegal, regardless of whether the calls were telemarketing.

38. Accordingly, Defendant's calls to Plaintiff using an automatic telephone dialing system or prerecorded voice violated 47 U.S.C. § 227(b).

39. For violations of 47 U.S.C. § 227(b), Plaintiff is entitled to $500 to $1500 per call.

40. Further, the issues with Defendant's telemarketing calling practices are not isolated to Plaintiff. A search for two of the numbers from which Defendant called shows numerous

complaints from individuals that Defendant would not stop calling when asked.[1]

41. In addition, the TCPA prohibits making "any call for telemarketing purposes" unless the caller has instituted certain minimum standards with respect to persons who request not to receive telemarketing calls (regardless of equipment used or consent obtained).

42. These standards include, among others, keeping a written policy, available upon demand, for maintaining a do-not-call list, and training personnel engaged in telemarketing on the existence and use of the do-not-call list. 47 CFR § 64.1200(d).

43. At the time of its calls to Plaintiff, Defendant did not have such a written policy, nor did it train personnel engaged in telemarketing on the existence and use of its do-not-call list.

44. Plaintiff, through his counsel, has repeatedly requested Defendant's "do not call" policy in place at the time of the calls to Plaintiff. Specifically, Plaintiff requested this policy:

- On May 30, 2018, Plaintiff's counsel requested this policy in a telephone conversation with Jessica Williams, Executive Resolution Analyst for Defendant.

- The same day, Matthew Varzally, Senior Counsel – Litigation & Investigations for Defendant, reached out to Plaintiff's counsel requesting that all communication regarding this potential case be directed to him. In response, Plaintiff's counsel requested a copy of Humana's written do not call policy.

- The following day, Mr. Varzally responded, but made no mention of providing the requested "do not call" policy. Plaintiff's counsel replied stating, among other things, that the "do not call" policy is something Defendant is required to

---

[1] https://800notes.com/Phone.aspx/1-866-452-6442; https://800notes.com/Phone.aspx/1-888-538-3518

provide by law.

- On June 4, 2018, Plaintiff's counsel followed up, asking where "we stand on this."

- On June 5, 2018, Plaintiff's counsel followed up again, writing "I just want to be clear that your silence should be taken as … a refusal to produce Humana's written do not call policy…. Let me know."

- Mr. Varzally responded to this June 5, 2018 email stating, among other things, "information is not just at my fingertips."

- Plaintiff's counsel responded that same day stating, among other things, "I understand some information is not at your fingertips, but the do not call policy should be. What document do you send callers when they ask for Humana's 'do not call' policy?"

- On June 7, Mr. Varzally responded "[w]e have a DNC policy. I have a copy of it. My question is why you need it in connection with our specific discussions about avoiding a future lawsuit?" Further in the email, Mr. Varzally continued that unless the parties were exploring a resolution, "you should not expect 'free discovery' from Humana."

45.  Thus, given Defendant's steadfast refusal to provide the policy without some assurances of a potential out-of-court settlement, and the persistence required for Plaintiff to obtain this policy, even if Defendant did have a such a policy in place at the time of the calls, it was not "available upon demand".

46.  On June 13, Defendant did finally provide a policy in PDF form (after Plaintiff's counsel's additional requests on June 7 and follow up on June 12).

47. This PDF, however, was created on June 13 at 11:43 AM by Todd Veirs, Humana's Assistant General Counsel – a mere 8 minutes before the policy was turned over.

48. While it is possible that Defendant created this PDF from an older word document prior to sending it to Plaintiff's counsel, thus the creation date, Defendant has refused to produce this underlying word document, despite Plaintiff counsel's requests.

49. As such, despite Plaintiff's repeated attempts to obtain the written "do not call" policy in place at the time of the calls to him, Defendant has not produced anything demonstrating it had such a written policy at that time.

50. In addition, if it is Defendant's practice to convert word documents to PDF before circulating those documents, and it only created the "do not call" policy PDF after Plaintiff's repeated requests, it raises the question of whether this policy had ever been disclosed or circulated anywhere prior to production to Plaintiff (as if it had, the previously created PDF would presumably have been available for production).

51. Accordingly, all of Defendant's telemarketing calls to anyone, in the absence of such a policy, and regardless of consent or equipment used, violate 47 U.S.C. § 227(c).

52. While the exact number of calls to Plaintiff's cellular telephone number will be determined in discovery, as described above, Plaintiff has received more than two such telemarketing calls in a 12-month period.

53. Plaintiff is entitled to up to $500 for each call placed to his cellular telephone in violation of 47 U.S.C. § 227(c), separate from and in addition to the damages allowed for 47 U.S.C. § 227(b).

54. Plaintiff is entitled to $1,500 per call for violations of § 227(c) if the Court finds that the violations were knowing and/or willful.

55. Plaintiff has suffered actual injury because of Defendant's unwanted and untrained telemarketing telephone calls, including, but not limited to:

- Device storage;
- Data usage;
- Lost time tending to and responding to the unsolicited calls;
- Invasion of Privacy;
- Nuisance;
- Deprivation of the right to request, receive, and act in accordance with the mandated "do not call" policy to stop further calls.

56. These forms of actual injury are sufficient for Article III standing purposes.

## CLASS ACTION ALLEGATIONS

57. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two proposed Classes, defined as follows:

> Since June 15, 2014, Plaintiff and all persons to whose cellular telephones Defendant Humana Pharmacy, Inc. placed (or had placed on its behalf) a telemarketing telephone call using identical, or substantially identical, equipment as the equipment used to place telemarketing telephone calls to Plaintiff.

("B Class")

> Since June 15, 2014, Plaintiff and all persons to whose cellular telephones Defendant Humana Pharmacy, Inc. placed (or had placed on its behalf) a telephone call using identical, or substantially identical, equipment as the equipment used to place telemarketing telephone calls to Plaintiff, after a request was made to Defendant to stop further calls.

("B Subclass")

> Since June 15, 2014, Plaintiff and all persons within the United States to whose telephone number Defendant Humana Pharmacy, Inc. placed (or had placed on its behalf) two or more telemarketing telephone calls in a 12-month period.

("C Class")

58. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

59. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

60. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant maintains written and electronically stored data showing:

   a. The time period(s) during which Defendant placed its telephone calls;

   b. The telephone numbers to which Defendant placed its telephone calls;

   c. The telephone numbers for which Defendant had prior express written consent;

   d. The purposes of such calls;

   e. Requests from members to stop further calls;

   f. The names and addresses of Class members.

61. The Classes are comprised of hundreds, if not thousands, of individuals nationwide.

62. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

   a. Whether Defendant maintained a written "do not call" policy;

   b. Whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

   c. Whether Defendant obtained prior express written consent;

   d. Whether Defendant placed telephone calls using an automatic telephone dialing system or artificial or prerecorded voice;

  e. Whether Defendant used said system to place telephone calls to class members after they revoked consent;

  f. Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

  g. Whether Defendant should be enjoined from engaging in such conduct in the future.

63. Plaintiff Walker is a member of the Classes in that Defendant placed two or more calls for telemarketing purposes in a one-year period to his telephone number without obtaining consent, after he revoked consent, and without having a written "do not call" policy in place or training its personnel on the existence and use of any such "do not call" policy, and these calls used an automatic telephone dialing system.

64. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

65. Plaintiff and all putative Members of the Classes have also necessarily suffered actual damages in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls, lost space on their devices, and suffered a nuisance and an invasion of their privacy as they were unable to effectively stop the calls if they wanted to do so, or obtain a "do not call policy" upon which they could rely to stop the calls.

66. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

67. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent themselves and the Classes.

68. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

69. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

70. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

71. Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**(On Behalf of Plaintiff and the B Class and Subclass)**

72. Plaintiff and the proposed B Classes incorporate the foregoing allegations as if fully set forth herein.

73. Defendant placed telemarketing calls to Plaintiff's and B Class Members' telephone numbers without prior express written consent.

74. Defendant placed telephone calls to Plaintiff's and B Subclass Members' telephone numbers after B Subclass Members revoked consent.

75. Plaintiff's and B Class Members' telephone numbers are assigned to a cellular telephone service.

76. As alleged, these calls all used an "automatic telephone dialing system."

77. The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

78. Plaintiff and B Class and Subclass Members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

79. Plaintiff and B Class and Subclass Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the C Class)

80. Plaintiff and the proposed C Class incorporate the foregoing allegations as if fully set forth herein.

81. Defendant placed numerous calls for telemarketing purposes to Plaintiff's and C Class Members' telephone numbers.

82. Defendant did so despite not having a written policy pertaining to "do not call" requests.

83. Defendant did so despite not having such a policy available "upon demand."

84. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

85. Plaintiff and C Class Members each received two or more calls in a 12-month period.

86. Plaintiff and C Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

87. Plaintiff and C Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Walker, individually and on behalf of the Classes, prays for the following relief:

    A.      An order certifying the Classes as defined above, appointing Plaintiff Walker as the representative of the Classes and appointing his counsel as Class Counsel;

    B.      An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(b) and (c);

    C.      An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    D.      An award of statutory damages for violations of 227(c);

    E.      An award of treble damages;

    F.      An award of reasonable attorneys' fees and costs; and

    G.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: July 10, 2018  
Wilmington, DE

**CROSS & SIMON, LLC**

*/s/ Christopher P. Simon*  
Christopher P. Simon (No. 3697)  
1105 North Market Street, Suite 901  
Wilmington, Delaware 19801  
Telephone: (302) 777-4200  
Facsimile: (302) 777-4224  
csimon@crosslaw.com

-and-

Jeremy M. Glapion, Esq.  
**THE GLAPION LAW FIRM, LLC**  
1704 Maxwell Drive  
Wall, New Jersey 07719  
Tel: 732.455.9737  
jmg@glapionlaw.com

*Counsel to Plaintiff*